**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DELAWRENCE A. KING, | : | Case No. 01:12 CV 2000 |
| Petitioner, | : | |
| vs. | : | |
| DONALD MORGAN, WARDEN, | : | **MAGISTRATE'S REPORT AND** |
| | : | **RECOMMENDATION** |
| Respondent. | | |

## I. INTRODUCTION

This case was automatically referred to the undersigned Magistrate Judge for report and recommendation pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, Respondent's Return of Writ and Petitioner's Traverse (Docket Nos. 1, 4 & 5).  For the reasons set forth below, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. FACTUAL BACKGROUND.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, the determination of factual issues made by a

State court shall be presumed to be correct.  28 U. S. C. § 2254(d)(1) (Thomson Reuters 2013).

This statutory presumption of correctness extends to factual findings made by state appellate

courts on the basis of their review of trial court records.  *Hardaway v. Withrow,* 305 F.3d 558,

563 (6th Cir. 2002) *cert. denied*, 123 S. Ct. 2078 (2003) (*citing Brumley v. Wingard*, 269 F.3d

629, 637 (6th Cir.2001) (*citing Sumner v. Mata*, 101 S.Ct. 764, 768-769 (1981)).  The applicant

shall have the burden of rebutting the presumption of correctness by clear and convincing

evidence.  *Id.* (*citing* 28 U.S.C. § 2254(e)(1)).

During the trial, the State presented testimony from several witnesses and Petitioner

testified on his own behalf.  *State v. King*, 2005 WL 1962967, *2 (2005) (unreported).  Because

Petitioner has not rebutted the high probability that the facts presented to the jury were true, this

summary of facts that was presented by the court of appeals is presumed correct.

Charles A. Mason ("Mason") testified to the following for the State.  In the early evening
of October 26, 2003, Mason was moving out of the Wilkes Villa housing complex when he
heard his fiancé arguing with someone.  Mason discovered Petitioner attempting to remove the
rear exterior light of Mason's apartment.  Petitioner then "pulled a pistol" on Mason; Petitioner
eventually settled down, put the gun away, and left.  Later, Mason and his fiancé encountered
Petitioner again and Petitioner accused Mason of owing him money and asked Mason if he had
called the police.  When Petitioner was convinced that Mason had not called the police he left.
Mason and his fiancé began to walk towards their car and Mason heard gunshots coming from
the vicinity of Petitioner.  Mason identified a red coat with fur as being Petitioner's coat, but
stated that Petitioner was not wearing it when he saw him that evening.  On cross-examination
Mason denied buying drugs from Petitioner.

Darrine T. Miles ("Miles") testified that he also lived in Wilkes Villa, was friends with
Petitioner, and saw Petitioner on October 26, 2003. Miles and Petitioner drank beer and talked
during the day and met up again that evening. That evening Petitioner told Miles that he had
fired a gun earlier in the day and attempted to take a light bulb.  Miles and Petitioner went to
Petitioner's sister's house for an hour to an hour and a half and then, at Petitioner's direction, they
left and walked to Tedman Court, another area in Wilkes Villa.  Miles knew that Petitioner had
his gun in his waistband.  Petitioner told Miles they were going to get gas money, but Miles had
no idea where they were going to get it from. . . . .  When they arrived at Tedman Court, they
encountered a group of people.  Miles knew them by name and/or street name; the group
included "Michi"/Demetruis, Roy Killings ("Killings"), Darius Corlew ("Corlew"); and "New
York"/Tyrone Francis ("Francis").  Everyone talked for about 15 minutes and Corlew stated that

2

he felt threatened because Petitioner was standing by him with a gun; Petitioner told Corlew he was not threatening him.  No one else in the group had a gun.  An argument ensued and Petitioner pulled out the gun and cocked it.  After cocking the gun, Petitioner told Corlew that now he was threatening him and when Corlew started walking towards Francis' apartment screen door Petitioner fired the gun. Petitioner pointed the gun directly at Corlew and fired, with only two to three feet in between them.  Once Petitioner started firing everyone ran.  Petitioner fired the gun until it was empty.  Miles and Petitioner then fled the scene and ran to Miles' aunt's house.  Miles did not see Petitioner's gun after they arrived at his aunt's apartment.  While running Miles and Petitioner threw their coats off.  When they arrived at Miles' aunt's apartment they encountered a family friend, asked for a ride out of the area, and a neighbor gave them a ride to Lorain.  During the ride, Petitioner's pager went off and he used the neighbor's cell phone.  The neighbor dropped Petitioner off at a family member's house and then dropped Miles off at his mother's house. Miles told his mother what had happened and spoke with his father, who informed Miles that the police were looking for him and he needed to turn himself in. Miles then went to the Elyria Police Station.

Miles testified to the following on cross-examination. Miles had several conversations with the police about what happened on October 26, 2003 and they questioned the accuracy of some of his statements. Wilkes Villa is a high drug and crime area. Miles denied that Petitioner's coat was the "dope coat," which is the coat the dope dealer wears.  About two or three weeks prior to the shooting Petitioner was robbed at gun point in Wilkes Villa.  Petitioner was not wanted around Wilkes Villa.  Miles denied disposing of Petitioner's gun after the shooting, but he did admit firing into the air prior to the shooting. Prior to the argument between Corlew and Petitioner, Francis went into his apartment; Corlew had opened the door to enter the apartment when Petitioner began firing.  When he spoke with the police, Miles told them Petitioner either shot Corlew because he was drunk or scared that Corlew was going to get a gun.  Miles testified on re-direct examination that he did not fire the gun by Mason's apartment and that Corlew had his back to Petitioner when Petitioner shot him.

Jamie Leticia Williams ("Williams"), a seventh grader, testified that she witnessed the shooting at Ledman Court and identified Petitioner as the shooter.  She saw Petitioner talking with someone, pull a gun, and start shooting.  On cross-examination Williams testified that she saw two people with guns and only Petitioner fired a gun.

Demetrius Martel Tarrant ("Tarrant") testified to the following for the State.  He was present on Tedman Court when Corlew and Francis were shot.  He saw Petitioner and Miles approaching and noticed Petitioner loading and cocking a gun and then "put [the gun] in his pants."  Corlew told Petitioner he felt threatened by him having a gun and Petitioner told him he wasn't threatening him, but Corlew still felt threatened.  Petitioner said if he pulled out the gun he was going to use it. Corlew told him to go somewhere else with the gun. Tarrant then saw Petitioner pull the gun out and fire. No one else had a gun that night.  The shooting occurred as Corlew was going into the apartment and Francis was coming out; both men were shot.  Tarrant testified on cross-examination that Petitioner was the only person with a gun.  There was tension between Petitioner and Corlew.  Tarrant denied Killings ditched a gun as they ran from the shooting.  On re-direct examination, Tarrant testified that when Petitioner approached the group

that night, Corlew told him that he had already seen Petitioner that evening and yelled at him for shooting at the clouds.

Dr. Matus, the Lorain County Coroner, performed the autopsies on Corlew and Francis and testified that Francis died from a single gunshot wound and Corlew was shot four times and died as a result of his injuries

Detective Scott L. Willis of the Elyria Police Department ("EPD") testified to the following. Six shell casings were located outside Corlew's apartment. He recovered a red jacket about a half mile from the crime and it tested positive for gunshot residue. He also identified a red leather jacket that Miles had turned into the police. No gunshot residue was found on the hands of Corlew or Francis.

Killings testified to the following for the State. At the time of the shooting he was living in Wilkes Villa. When Petitioner approached the group outside Francis' apartment, Corlew told Petitioner to put the gun away or leave. Petitioner then pulled the gun out and Corlew again told him to go away and attempted to enter the apartment. Petitioner began firing and Corlew was shot as he attempted to enter the apartment and Francis was shot as he attempted to exit the apartment. Right before Petitioner started shooting he told Corlew "Lay your bitch ass down." No one else had a gun that night.

On cross-examination, Killings testified to the following. He did not speak to the police the night of the shooting because he ran from the shootings. Killings admitted that he was currently being held in Juvenile Detention for drug trafficking. A couple weeks before the shootings, in an attempt to rob one of Killings' friends, Petitioner hit Killings' friend with a beer bottle. In response, Killings, that friend, and another friend found Petitioner and beat him up. One of Killings' friends stole Petitioner's pager, but Killings gave it back to him. Killings denied stealing Petitioner's drugs a couple days before the shootings. About 20 minutes before the shootings, Corlew told Killings that if Petitioner came up with a gun, he was going to "rush him." When Petitioner and Miles approached about 10-11 males were outside Francis' apartment. Petitioner said something about shooting Corlew. Killings denied having a gun that night and denied pointing it at Petitioner. Killings testified on re-direct examination that Corlew and Francis were not involved in the incident where Petitioner was beaten up and his pager was stolen.

Jerrod Jackson ("Jackson") testified that he was currently incarcerated for assaulting a police officer and intimidation. Jackson was present during the shootings and he saw Petitioner approach the group outside Francis' apartment and pull out a gun and start shooting. Petitioner then ran right past him and Miles ran after him; at one point Petitioner turned around and "was about to fire at [Miles]" until Miles said "It's me, it's me." The two continued to run away from the scene and Jackson went to the apartment and saw Corlew on the ground. Jackson remained on the scene until the police told him to leave. Jackson testified on cross-examination that he spoke to a police officer the night of the shootings and that he had been with the group prior to the shooting and was returning to the group when the shootings occurred.

4

Sade Charlton ("Charlton") testified to the following for the State. She was Petitioner's girlfriend for a couple of months in 2003. After she heard about the shootings, she paged Petitioner because she did not believe that he shot Corlew and Francis. Petitioner called Charlton back and she asked him if he shot two people and he said no. Then she asked him if he fought with two people and he answered yes. When asked why she used the term "fight" in the conversation, Charlton explained that Petitioner thought the phones were being tapped, so instead of using the word "shoot" she used the word "fight."  Charlton testified on cross-examination that during her conversation with Petitioner the night of the shootings he said: "That n[ ] was coming at me crazy, and that's why I shot him."  On re-direct, Charlton testified that Petitioner actually said:  "That n [ ] was talking crazy, so I did what I had to do."  During the investigation, Charlton told the police Petitioner told her he shot Corlew because he was talking crazy. Charlton confirmed her prior statement to the police three times during redirect examination. *Id.* at *2 - *6.

### III. Procedural Background.

On November 5, 2003, Petitioner was indicted on:

1. Two counts of aggravated murder, in violation of Ohio Rev. Code § 2903.01(A), with three year gun specifications;
2. Two counts of murder, in violation of Ohio Rev. Code § 2903.02(B), with three year gun specifications;
3. Two counts of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(1), with three year gun specifications; and
4. One count of improperly discharging a firearm at/into a habitation, in violation of Ohio Rev. Code § 2923.161, with a three year gun specification. *Id.* at *1.

Petitioner entered pleas of "not guilty" to all charges and on September 20, 2004, a jury trial commenced.  After the State rested its case, Petitioner made a Ohio Crim. R. 29 motion, which the trial court denied on all counts except count two, the second aggravated murder count with a three-year gun specification. *Id.*  On September 23, 2004, the jury returned its verdict and found Petitioner guilty of both murder counts with the gun specifications and one count of felonious assault with the gun specification (Docket No. 4-7, pp. 5-6 of 8).

Upon consideration of all matters set forth by law, it was the judgment of the court that Petitioner be sentenced as follow:

5

Count 1     Fifteen years to life and three years for the gun specification.
Count 2     Fifteen years to life and three years for gun specification.
Count 3     Three years plus three for the gun specification (Docket No. 4-6, pp. 5-9 of 9; Docket No. 4-7, pp. 6 of 8).

Petitioner timely appealed his convictions to the state appellate court, asserting four assignments of error.

1.     Petitioner's conviction was against the manifest weight of the evidence.
2.     The trial court erred by denying Petitioner's motion for judgment of acquittal pursuant to RULE 29 of the OHIO RULES OF CRIMINAL PROCEDURE.
3.     The trial court abused its discretion by denying appellant's motion for a change of venue.
4.     Appellant was denied his right to effective assistance of counsel.

*King*, 2005 WL 1962967, at *2 -*10.

All four of Petitioner's assignments of error were overruled and the judgment of the trial court was affirmed.  The appellate court found that there were reasonable grounds for the appeal and issued a special mandate, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry the judgment into execution.  *Id.* at *10.

Petitioner filed a notice of appeal in the Supreme Court of Ohio on October 3, 2005. There, he asserted four propositions of law:

1.     Petitioner's conviction was against the manifest weight of the evidence.
2.     The trial court erred by denying Petitioner's motion for judgment of acquittal pursuant to RULE 29 of the OHIO RULES OF CRIMINAL PROCEDURE.
3.     The trial court abused its discretion by denying Petitioner's motion to change venue.
4.     Petitioner was denied the right to effective assistance of counsel (Docket No. 4, pp. 9-10 of 34).

On December 28, 2005, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not having any substantial constitutional question (Docket No. 4-1, p. 8

6

of 20).

United States Magistrate Judge Patricia Hemann, retired, issued a decision on December 15, 2006, in which she recommended that the Court dismiss Petitioner's petition for writ of habeas corpus.  In the petition, Petitioner raised four grounds for relief:

1. Petitioner's conviction was against the manifest weight of the evidence.
2. The trial court erred by denying Petitioner's motion for judgment of acquittal pursuant to RULE 29 of the OHIO RULES OF CRIMINAL PROCEDURE.
3. The trial court abused its discretion by denying Petitioner's motion to change venue.
4. Petitioner was denied his right to effective assistance of counsel (Docket No. 4-1, pp. 7-8 of 20).

On December 29, 2006, United States District Judge Christopher A. Boyko adopted the Magistrate's report and recommendation and denied the petition for writ of habeas corpus (Docket Nos. 4-2 and 4-3).  Petitioner's application for a certificate of appealability from the United States Court of Appeals for the Sixth Circuit was denied on October 12, 2007 and the motion to proceed *in forma pauperis* was denied as moot (Docket No. 4-4).

Petitioner filed the following motions on August 3, 2009, in the Court of Common Pleas, Lorain County, Ohio,

1. Motion to vacate and/or set aside conviction on August 3, 2009 (Docket No. 4-5).
2. "Motion to resentence defendant journal entry filed September 24, 2004 void; noncompliance with CRIM. R. 32" (Docket No. 4-6).

On August 6, 2009, the motion to vacate and motion to re-sentence were denied (Docket No. 4-8).  On September 9, 2009, the Honorable Christopher R. Rothgery reconsidered the motion to re-sentence based on the current state of the law, vacated the prior sentence and ordered that the matter be scheduled for re-sentencing pending the preparation of a pre-sentence

report (Docket No. 4-9; Docket No. 4-11, pp. 2-3 of 21).  Judge Rothgery entered a judgment

entry of conviction and sentence on December 16, 2009, in which he concluded that based on his

juvenile record, his raucous and violent behavior and the results from a pre-sentence

investigation, Petitioner was a danger to society.  Petitioner was re-sentenced to:

| | |
|---|---|
| Count 3 | Fifteen years to life on the murder charge with a three-year term on the firearm specification, for an aggregate sentence of 18 years to life. |
| Count 4 | Fifteen years to life on the murder charge plus the three-year term on the firearm specification which merged for purposes of sentencing with the firearm specification in count 1.  Count 3 and 4 shall run consecutively to each other. |
| Count 5 | Three years on the felonious assault charge with a 3-year firearm specification which merged with the specification in count 3.  Count 5 is to run concurrently to count 1.  Upon release from prison, Petitioner was subject to 3 years of mandatory post-release control for the felonious assault (Docket No. 4-11, pp. 8-11; 16-19 of 21). |

Petitioner timely appealed his re-sentencing and raised three assignments of error:

1.  Petitioner's conviction for murder in counts 3 and 4 of the indictment must be reversed because both Counts omitted a material element of the offense, in violation of Petitioner's constitutional right to a grand jury indictment and his constitutional right to due process.
2.  The verdicts in this case are against the manifest weight of the evidence.
3.  The trial court violated Petitioner's right to due process by imposing a harsher sentence after the court granted the motion to vacate his conviction (Docket No. 4-13).

Petitioner, *pro se*, filed a petition to vacate or set aside sentence on June 18, 2010 in the

court of common pleas.  His sole claim was that he had been deprived of the right to confront the

witnesses against him (Docket No. 4-29).

On September 20, 2010, the appellate court affirmed the conviction and overruled all

three assignments of error:

1.  The bill of particulars did not allude to any potential crimes other than those set

8

forth in the indictment.  There was no error in the indictment.

2.  Upon review of the testimony adduced at trial, the court could not say that the jury clearly lost its way when it convicted Petitioner of felonious assault and murder.

3.  The trial court did not err when affirmatively stating its reasons for increasing Petitioner's sentence which were based upon objective information concerning identifiable conduct on the part of Petitioner occurring after the time of the original sentence proceeding (Docket No. 4-12; Docket No. 4-15).

Petitioner, *pro se,* filed a notice of appeal and a motion for delayed appeal in the Supreme Court of Ohio on November 30, 2010.  In the motion for delayed appeal, Petitioner reiterated that:

1.  His conviction was based on a defective indictment.

2.  His conviction was against the manifest weight of the evidence.

3.  His right to due process was violated when the trial court imposed a harsher sentence after granting his motion to vacate the conviction (Docket No. 17; Docket No. 18).

On January 19, 2011, Chief Justice Maureen O'Connor denied the motion for delayed appeal and dismissed the case (Docket No. 20).

On or about December 16, 2010, Petitioner, represented by counsel, filed an application for reopening in which allegations were made that trial and appellate counsel were ineffective for failing to raise the following:

1.  Felonious assault and murder are allied offenses of similar import under OHIO REV. CODE § 2941.25.

2.  Petitioner was deprived of a fair trial when inflammatory comments made by the prosecutor during closing were made without objection by trial counsel or addressed as an assignment of error by appellate counsel (Docket No. 4-21).

On April 13, 2011, the court of appeals denied the application to reopen Petitioner's appeal, finding that unique procedural stance of the case along with the Supreme Court of Ohio's decision in *State v. Fischer*, 128 Ohio St. 3d 92 (2010), compelled an order denying the application.  More importantly, the court found that Petitioner could not claim he generally

9

received ineffective assistance of counsel with respect to an issue that he could not have properly presented in his second appeal (Docket No. 4-23).

On May 23, 2011, Petitioner, *pro se*, filed a notice of appeal in the Supreme Court of Ohio.  In the memorandum supporting the application, Petitioner provided an explanation of why the case was of public or great general interest:

1.  The appellate court abused its discretion when it denied Petitioner's application for reopening pursuant to APP. R. 26(B).
2.  Appellate counsel was ineffective for not raising a claim that the trial court committed plain error when it convicted Petitioner of both felonious assault and murder.
3.  Appellate counsel was ineffective for not raising the State's misconduct during its closing argument.
4.  Appellate counsel was ineffective for not raising trial counsel's failure to object to the State's improper statement made during closing (Docket No. 4-26).

On August 24, 2011, Chief Justice O'Connor dismissed the appeal as it did not involve any substantial constitutional question (Docket No. 4-28).

On August 3, 2012, Petitioner filed the PETITION UNDER 28 U. S. C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY in this Court.  Respondent contends that the Petition is apparently timely filed.  Petitioner asserts seven grounds for relief:

1.  A material element was omitted from the indictment.
    *Supporting Facts*:
    The indictment failed to properly charge Petitioner with the requisite *mens rea* in Counts three and four of the indictment.

2.  Petitioner's conviction was against the manifest weight of the evidence.
    *Supporting Facts:*
    Petitioner claims that the evidence against him was vague, uncertain and conflicting.  Convictions for murder and felonious assault are not supported by the evidence.

3.  Trial court imposed a harsher sentence upon Petitioner after he won a successful challenge to the initial sentence.
    *Supporting Facts:*
    The trial judge used his own judicial philosophy and biases to increase the

10

sentence (Docket No. 1-1, pp. 1-2 of 5).

4.      The court of appeals abused its discretion when it denied Petitioner's application for reopening.
*Supporting Facts:*
Petitioner argues that the court violated OHIO CRIM. R. 52, specifically, the court failed to conduct a "plain error" review of the underlying decision, even though Petitioner demonstrated that he was entitled to relief.

5.      Petitioner's appellate counsel was ineffective for not raising the fact that the felonious assault and murder are of similar import.
*Supporting Facts*:
Petitioner suggests that he could not be tried and found guilty and sentenced separately for the offenses of felonious assault and murder. Appellate counsel's performance was deficient because of the failure to advance this argument on appeal was plain error.

6.      Petitioner's appellate counsel was ineffective for not raising the State's misconduct during its closing argument in the direct appeal.
*Supporting Facts*
Petitioner contends that he was prejudiced by trial counsel's failure to object to the State's inflammatory, improper and prejudicial comments made during closing argument. The outcome could have been different if his appellate counsel had objected to trial counsel's deficient performance.

7.      Petitioner's appellate counsel was ineffective for not raising trial counsel's failure to object to the State's improper statements during its closing arguments in the direct appeal.
*Supporting Facts*
Not only was trial counsel's performance deficient for failing to object to the State's inflammatory, improper and prejudicial comments made during closing, appellate counsel perpetuated the error by failing to assert trial counsel's failure to proffer a contemporaneous objection during trial.
(Docket No. 1-1, p. 5 of 5).

## IV. PETITIONER'S SECOND OR SUCCESSIVE PETITION.

1.      THE STANDARD OF REVIEW FOR SECOND OR SUCCESSIVE PETITIONS.

In relevant part, 28 U.S.C. 2244(b)(1) reads:

A claim presented in a second or successive habeas corpus application under Section 2254 **that was presented** (emphasis added) in a prior application shall be dismissed.

Section 2244(b)(2) reads:

A claim presented in a second or successive habeas corpus application under Section 2254 **that was not presented** (emphasis added) in a prior application shall be dismissed unless—

    (A)    the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

    (B)    (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.

*Bell v. Tibbals*, 2013 WL 1283868, *13 (N.D.Ohio,2013) *report and recommendation adopted by* 2013 WL 1283861 (N. D. Ohio 2013).

**2.**    THE STANDARD APPLIED TO PETITIONER'S CLAIMS.

Under the second or successive petition standard of review, the Magistrate finds that the second claim–Petitioner's conviction was against the manifest weight of the evidence–was presented in the first petition for writ of habeas corpus and then alleged in this case.  This ground for relief must be dismissed outright.

In determining compliance with the rule, the Magistrate finds that grounds one, five, six and seven were not presented in the first habeas petition and must be dismissed unless Petitioner shows that the claim relies on 28 U.S.C. 2244(b)(1) and (b)(2).  In his Traverse, Petitioner failed to make a persuasive argument couched in terms of a right that has been newly recognized by the Supreme Court and expressly made retroactively applicable to cases on collateral review.  Neither has he presented any newly discovered evidence that would establish by clear and

12

convincing evidence that no reasonable fact-finder would have found him guilty of the charged offenses.

When viewed in light of the evidence as a whole, the Magistrate notes that the court of appeals found that the underlying facts would not be sufficient to establish by a preponderance of the evidence, much less by clear and convincing evidence, that but for the alleged constitutional error, no reasonable fact-finder would have found Petitioner guilty of the underlying offenses. Furthermore, Petitioner has not satisfied either of the two predicates necessary to show an underlying proffered constitutional error that was not discovered but could have been with due diligence. The Magistrate finds that grounds one, five, six and seven do not satisfy the exceptions of Section 2244(b)(2) and therefore recommends their dismissal.

For the sake of analyzing Petitioner's third and fourth grounds, the Magistrate finds that Petitioner could not have discovered the facts through the exercise of due diligence since the facts necessary for consideration of these claims transpired as a result of re-sentencing. Grounds three and four will only be pursued on their merits once certain threshold requirements such as the statute of limitations, exhaustion and procedural default have been examined.

### V. THE STATUTE OF LIMITATIONS.

Under the ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT of 1996 (AEDPA), there is a one year statute of limitations that applies to the application of a writ of habeas corpus filed by a person in custody pursuant to a state court. *Keeling v. Warden, Lebanon Correctional Institution*, 673 F.3d 452, 458 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 141 (2012) (*citing* 28 U.S.C. § 2244(d)(1)). This statute of limitations begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action

in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* at 458-459 (*citing* 28 U.S.C. § 2244(d)(1)(A)–(D)).

AEDPA's one-year limitations period is not a jurisdictional bar and is subject to equitable tolling in certain instances.  *Ata v. Scutt,* 662 F.3d 736, 741 (6thCir.2011) (*See Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010)).  A petitioner is entitled to equitable tolling only if he or she shows:  (1) the diligent pursuit of his or her rights and (2) that some extraordinary circumstance stood in his or her way, thereby preventing the timely filing.  *Id.* (*citing Holland*, 130 S.Ct. at 2562; *quoting Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1814-1815 (2005)*; see also Robertson v. Simpson*, 624 F.3d 781, 783–784 (6th Cir.2010) (*quoting Holland*, 130 S.Ct. at 2560–62)).

Equitable tolling should be applied "sparingly."  *Id.* (*citing Solomon v. United States*, 467 F.3d 928, 933 (6thCir.2006).  Although "the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run," the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling.  *Id.* (*citing Griffin v. Rogers*, 308 F.3d 647, 653 (6thCir.2002)).

Because Petitioner's claims do not implicate Sections 2244(d)(1)(B), (C) or (D), the statute of limitations began to run at the expiration of the time for seeking direct review of his re-sentencing order filed on December 16, 2009.  Petitioner filed a timely direct appeal and the state appellate court affirmed the re-sentencing judgment on September 20, 2010.  Forty-five days later, on November 5, 2010, the time to file an appeal in the Supreme Court of Ohio

14

expired.  The statute of limitations commenced running on November 6, 2010 and was stopped beginning on November 30, 2010 when Petitioner filed a motion for delayed appeal in the Supreme Court of Ohio.  The Supreme Court of Ohio decided the motion of January 19, 2011. While the appeal on the motion for delayed appeal was pending, Petitioner filed a motion to reopen.  An order dismissing the appeal to the Supreme Court on this motion was entered on August 24, 2011.  The delayed application under RULE 26(B) was part of the direct review process and the AEDPA's statute of limitation was, at the very least, tolled during the 90–day period for seeking *certiorari* with the United States Supreme Court after the denial of such an application.

When calculating the statute of limitations and applying the principles to this case, the clock ran for a period of 24 days between November 6, 2010 and November 30, 2010.  The clock stopped running from November 30, 2010 through November 22, 2011.  Petitioner filed his Petition for Writ of Habeas Corpus on August 3, 2012, approximately three months before the expiration of the statute of limitations on November 22, 2012.  The Magistrate finds that Petitioner's Petition is timely filed.

### VI. PROCEDURAL DEFAULT STANDARD OF REVIEW.

Pursuant to 28 U. S. C. § 2254, there are constraints placed on this federal habeas court before granting a timely filed application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  *Doan v. Carter*, 548 F. 3d 449, 454 (6th Cir. 2008) *cert. denied,* 130 S. Ct. 366 (2009) (*citing Williams v. Taylor*, *supra,* 120 S. Ct. at 1523).  Habeas review is limited to non-time barred claims for relief that have been fully exhausted in state court.  *Id.*

The federal habeas court is not a forum for trying facts and issues which a petitioner

15

failed to pursue in state proceedings.  *Seymour v. Walker*, 224 F.3d 542, 549 (6th Cir. 2000) *cert.*

*denied*, 121 S. Ct. 1643 (2001).  When a habeas petitioner fails to obtain consideration of a claim

by a state court, either due to the petitioner's failure to raise that claim before the state courts

while state court remedies were still available or due to a state procedural rule that prevented the

state courts from reaching the merits of the claim, that claim is procedurally defaulted.  *Id*. at

549-550.  A federal court will review a defaulted claim only if a petitioner "show[s] that there

was cause for the default and prejudice resulting from the default, or that a miscarriage of justice

will result from enforcing the procedural default."  *Id*. at 550.

1.    *MAUPIN V. SMITH* STANDARD OF REVIEW.

        For noncompliance with a state procedural rule to serve as a bar to habeas review, the

state procedure must satisfy the standards set forth in the seminal case of *Maupin v. Smith*, 785

F.2d 135, 139 (6th Cir. 1986).  *Scott v. Brunsman*, 695 F.Supp.2d 771, 779 (N.D.Ohio,2010).

First, there must be a state procedural rule in place that the petitioner failed to follow.  *Id*. (*Smith*

*v. State of Ohio Department of Rehabilitation and Corrections*, 463 F.3d 426, 431 (6th Cir. 2006)

(*citing Maupin*, 785 F.2d at 138)).    Second, the state court must have actually denied

consideration of the petitioner's claim on the ground of the state procedural default.  *Id*. (*citing*

*Smith,* 463 F.3d at 501-502).    Third, the state procedural rule must be an "adequate and

independent state ground to preclude habeas review."  *Id*.  If these three factors are satisfied, the

petitioner can overcome the procedural default by either demonstrating cause for the default and

actual prejudice as a result of the alleged violation of federal law, or that failure to consider the

claims will result in a fundamental miscarriage of justice.  *Id*. (*citing Coleman v. Thompson*,  111

S.Ct. 2546, 2555 (1991)).

a. **"Cause" for default Standard.**

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate "cause" for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Wogenstahl v. Mitchell,* 668 F.3d 307, 321 (6th Cir. 2012) *cert. denied*, 133 S. Ct. 311 (2012) (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2565 (1991)). The "cause" for default standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts. *Id.* (*citing McCleskey v. Zant,* 111 S.Ct. 1454, 1469 (1991) (internal quotation marks omitted)). Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available. *Id.* (*citing McCleskey*, at 1470).

b. **Actual prejudice standard.**

The prejudice prong is an elusive concept but several guidelines can be discerned from the Supreme Court's pronouncements and the case law interpreting those pronouncements. *Maupin, supra*, 785 F.2d at 139. First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines. *Id.* (*See United States v. Frady*, 102 S.Ct. 1584, 1594 (1982) (prejudice must result from the errors of which defendant complained)). Second, the burden is on the petitioner to show that he or she was prejudiced by the alleged constitutional error. *Id.* (*citing Frady*, 102 S.Ct. at 1595). Moreover, the petitioner must show that there was actual

17

prejudice not merely a possibility of prejudice.  *Id.* (*See also Engle v. Isaac*, 102 S.Ct. at 1572).

Third, in analyzing a petitioner's contention of prejudice, the court should assume that the

petitioner has stated a meritorious constitutional claim.  *Id.*  Thus, the examining court must

examine whether the petitioner was prejudiced by his conviction based on allegedly insufficient

evidence.  *Id.*

      **c.**      **FUNDAMENTAL MISCARRIAGE OF JUSTICE STANDARD.**

A fundamental miscarriage of justice results when one who is actually innocent is

convicted.  *Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir. 2011) *cert. denied,* 132 S. Ct.

1909 (2012).  "Actual innocence" is an extremely narrow exception, and "claims of actual

innocence are rarely successful."  *Id.* (*citing Schlup v. Delo*, 115 S.Ct. 851, 864 (1995)).

Moreover, "a claim of 'actual innocence' is not itself a constitutional claim, but instead a

gateway through which a habeas petitioner must pass to have his otherwise barred constitutional

claim considered on the merits."  *Id.* (*citing Herrera v. Collins*, 113 S.Ct. 853, 862 (1993)).

**2.**      **PETITIONER'S COMPLIANCE WITH *MAUPIN* PRINCIPLES.**

Petitioner exhausted Ground three by squarely presenting it on direct appeal to the court

of appeals describing operative facts and asserting legal theories underlying his claims that he

was given a harsher sentence after successfully challenging the initial sentence.  With respect to

the first prong of the *Maupin* test, it is undisputed that Petitioner filed a motion for delayed

appeal in the Supreme Court of Ohio after the 45 days designated for instituting such an appeal

had expired.  OHIO SUP. CT. R. II, § 2.2 establishes a procedural rule governing appeals which

includes the types of appeals and how they can be perfected.  The Supreme Court of Ohio

actually enforced the 45-day rule and dismissed Petitioner's appeal without explanation, thus

imposing its own procedural sanction.  In *Bonilla v. Hurley*, 370 F.3d 494, 497 (6[th]Cir.2004)

*cert. denied*, 125 S. Ct. 506 (2004), the Sixth Circuit held that the unexplained state court decision denying leave to file an untimely appeal to the Ohio Supreme Court is assumed to enforce any applicable procedural bar.  That being so, the Magistrate finds that the first and second prongs of the *Maupin* test have been met.

Under the state procedural mechanism established in OHIO SUP. CT. R. II, § 2.2, the Supreme Court of Ohio has jurisdiction over timely filed appeals which are exercised within 45 days of entry of the state appellate court's decision.  A ruling that denies an untimely appeal is a procedural ruling which is both actually enforced and is an adequate and independent state ground which can foreclose federal habeas review consistent with *Maupin*.  *See Smith v. State of Ohio, Department of Rehabilitation and Correction*, *supra*, 463 F.3d at 431-432 and *see Coleman v. Thompson*, *supra*, 111 S.Ct. at 2565.  This federal court must enforce the firmly established and regularly followed procedural bar to Petitioner's third claim, resting its decision on the application on the Supreme Court of Ohio's authority to determine the question as to its own jurisdiction.  The third prong of the *Maupin* test is easily satisfied.

In order to complete the analysis, the Magistrate must address whether Petitioner has made a particularized showing of an objective factor external to the defense that impeded the ability to raise his claim in the Supreme Court of Ohio on a timely basis.  Petitioner suggests that after the appellate court denied his claim to reopen, appointed counsel failed to file a timely appeal to the Supreme Court.  Petitioner further alleges that but for appellate counsel's failure to perfect a timely appeal, he would have complied with the procedural standards.

Ineffective assistance of appellate counsel can constitute cause to excuse a procedural default.  *Landrum v. Mitchell,* 625 F.3d 905, 916 (6[th]Cir.2010) *cert. denied*, 132 S.Ct. 127 (2011) (*see Murray v. Carrier*, 492, 106 S.Ct. 2639 (1986); *Howard v. Bouchard*, 405 F.3d 459, 478

19

(6<sup>th</sup>Cir.2005)). However, an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim cannot itself be procedurally defaulted. *Id.* (*citing Edwards v. Carpenter*, 120 S.Ct. 1587, 1592 (2000)).

Appellate counsel's failure to file a timely appeal as the source of his procedural default could constitute the objective factor that impeded Petitioner's efforts to comply with the procedural rule in a timely manner. However, that claim is defaulted as well because Petitioner failed to raise the claim on this ground in state court. It cannot serve as an adequate cause to excuse the default of the underlying claim of trial error.

Notwithstanding Petitioner's conclusory assertions in the Traverse that the prejudice is so great that habeas relief should be granted, the "cause and prejudice" test are stated in the conjunctive and therefore both must be satisfied. Since Petitioner cannot show cause for committing the procedural default, the Magistrate need not address whether Petitioner was prejudiced.

Even though Petitioner has not shown "cause and prejudice," this Court has equitable discretion to correct a fundamental miscarriage of justice if Petitioner proffers specific facts which support a finding that constitutional errors resulted in the incarceration of an innocent person. Here, Petitioner has failed to make a strong showing that he is the victim of fundamentally unjust incarceration, having failed to allege or meet the narrow exception reserved for and explicitly tied to actual innocence. Failure to meet this miscarriage of justice exception precludes review of Petitioner's procedurally defaulted challenge to his claim of a harsher sentence. In conclusion, Petitioner is bound by his procedural default and he cannot obtain habeas review of his third ground for relief.

20

### VII. HABEAS STANDARD OF REVIEW.

A timely filed application for a writ of habeas corpus on behalf of a person in custody shall not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication of the claim—

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (Thomson Reuters 2013). A decision is "contrary to" clearly established federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Holder v. Palmer*, 588 F. 3d 328, 343 (6th Cir. 2009) (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)). A state court decision will be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases. *Id.* (*citing Williams*, 120 S.Ct. at 1523) (emphasis added).

A decision is an unreasonable application of clearly established federal law if it identifies the correct principle of law but unreasonably applies it. *Williams v. Coyle,* 260 F.3d 684, 699 (6th Cir. 2001) *cert. denied,* 122 S.Ct. 2635 (2002) (*See Williams v. Taylor, supra*, 120 S. Ct. at 1519). An unreasonable application of federal law is different from an incorrect application of federal law. *Id.* Under Section 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue [a] writ simply because that court concludes in its independent

21

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  *Id.*  Rather, that application must also be unreasonable.  *Id.* (*citing Williams v. Taylor, supra*, 120 S.Ct. at 1521) (original emphasis)).

As a condition for obtaining habeas relief from the federal court, a state prisoner must show that the state court's decision was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  *Bobby v. Dixon*, 132 S. Ct. 26, 27 (2011).  This bar is difficult to meet because "'habeas corpus is a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."  *Id.* (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2795, n.5 (1979)).

## VIII. DISCUSSION.

In his fourth claim, Petitioner claims that he is entitled to relief because the appellate court committed error or otherwise abused its discretion under state law when it denied his motion to reopen the appeal.  Respondent concurs that Petitioner's fourth claim is not subject to procedural default; however, on its merits, such claim is not cognizable in this habeas proceeding.  The Magistrate agrees.

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States.  *Ladd v. Tibbals,* 2012 WL 5364242, *6 (N.D.Ohio,2012) *report and recommendation adopted by* 2012 WL 5364406 (N.D.Ohio 2012) (*citing* 28 U.S.C. § 2254(a)).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Id.* (*citing Pulley v. Harris*, 104 S.Ct. 871, 874 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988) *cert.*

22

*denied*, 109 S.Ct. 169 (1988)).  It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Id.* (*citing Estelle v. McGuire*, 112 S.Ct. 475, 479 (1991)).  A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition."  *Id.* (*citing Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir.2005) (internal quotation omitted)).

Here, Petitioner is actually challenging a state court's use of discretion in applying its own precedents.  Such challenges to the discretion of state courts do not show a violation of the Constitution or the laws or treaties of the United States.  Clearly federal habeas corpus relief will not lie for alleged errors in interpreting and applying state law as asserted in Petitioner's fourth claim.

## IX. CONCLUSION

For these reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus, deny the certificate of appealability and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date:          July 9, 2013

## X. NOTICE

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.

24